## In re WINSTON'S LIEN.

(First Division.   Ketchikan.   February 6, 1922.) ·

**Attorney and Client ⬅187—Liens.**

Winston, an attorney, appeared for Hendrickson, the owner of claims against a bankrupt company, and procured their allowance by the referee in bankruptcy. Thereupon Hendrickson sold and assigned the claims to one Spaeth. Two months later Winston filed an attorney's lien on the fund payable on the claims of Hendrickson, for the sum due him in securing the allowance of Hendrickson's claims. The referee disallowed Winston's claim and lien, and on motion in the district court to set aside the referee's order of disallowance, *held*, the attorney's lien lies only under section 1574 Compiled Laws of Alaska 1913, and that upon notice. In this case the attorney gave the referee no notice, and did not file his lien and give notice until long after his creditor had assigned the fund to another in good faith. His lien did not attach, and the motion is denied.

I have considered the motion of W. H. Winston to set aside the referee's order, disallowing the claim of lien of Winston, as attorney, on moneys payable to one A. L. Spaeth, as assignee of H. B. Hendrickson and creditor of the estate of the bankrupt. The lien is claimed for services performed as

⬅See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

attorney at law in securing the allowance of the claims of said Hendrickson.

It appears from the record that on June 18, 1920, the creditor Hendrickson, filed with the special referee in bankruptcy several claims against the estate of the bankrupt, amounting, in all, to $706.20, and that on July 26, 1920, the referee allowed all the claims, giving priority to several to the amount of $428.80, the remainder of the claims being allowed as general claims against the estate. On December 18, 1920, Hendrickson, the creditor, assigned to Spaeth his interest in all moneys due from the bankrupt's estate, and all interest in the claims aforesaid. This assignment was filed with the referee on the same day as the execution; that is, on December 18, 1920. On February 18, 1921, after the assignment by Hendrickson to Spaeth aforesaid, Winston filed a notice of attorney's lien on the fund payable on the claim of Hendrickson, claiming the sum of $150 as reasonable attorney fee for services in procuring the allowance of the claims. Thereafter Winston was appointed trustee in bankruptcy for the estate, and on September 9, 1921, reported that sufficient moneys had been realized to pay the preferred claims. On September 9 (the day of the filing of the report of the trustee), the referee in bankruptcy directed, further, that the trustee pay the preferred creditors in full. On January 2, 1922, Spaeth, the assignee of Hendrickson, filed his petition for the payment of the preferred claims, amounting, as set forth in the petition, to $448.80, alleging, in his petition, that demand had been made on the trustee and payment had not been made.

No action appears to have been taken by the referee on this petition, but on January 9, 1922, the referee disallowed the claim of lien of Winston, above mentioned, and thereafter Winston filed, before this court, a motion to set aside the order of the referee, disallowing his claim of lien.

W. H. Winston, of Ketchikan, in pro. per.

REED, District Judge. The lien claimed by Winston in this proceeding is variously called a special, particular, or charging lien in distinction from the retaining or possessory lien recognized at common law. This special, particular, or charging lien is the right of an attorney or solicitor to receive his fees in money expended on behalf of his client from a

fund recovered through his efforts, and also the right of the court to interfere to prevent payment by the judgment debtor to the creditors in fraud of his right to the same, and also to prevent and set aside assignments or settlements made in fraud of his right. While an attorney's retaining lien was recognized at common law to the extent of the retention by the attorneys of all books, papers, etc., that came into his hands in the course of his professional employment, to secure his disbursements and compensation, the charging lien was only recognized to the extent of the taxable costs and disbursements made by him during his employment. In England and Canada, and in some of the states, the chargeable lien is still confined to taxable costs in the suit. In many states the lien has been enlarged, so as to include full compensation of the attorney, whether express or implied. In other states the lien has been extended to include the full compensation of the attorney, when there is a special contract only.

The lien in this case is claimed on a fund in the hands of the trustee in bankruptcy, which fund is applicable to the payment of the creditor's claim for services performed as attorney in securing the allowance of the claim before the referee. Naturally, no provision is made for such a lien in the Bankruptcy Act, as it is a claim for services as attorney in preparing and presenting the claims to the referee, and would not, therefore, be noticed in the Bankruptcy Act. It must be considered as an ordinary contract, with reference to the contract between attorney and his client, and comes within the provisions of section 1574, chapter 76, Code of Civil Procedure, Compiled Laws of Alaska 1913. This section provides for an attorney's lien for his compensation, whether the contract is express or implied, first, upon the papers of his client which have come into his possession in the course of his professional employment; second, upon money in his hands belonging to his client; third, upon money in the hands of the adverse party to the action or proceeding in which the attorney was employed from the time of giving notice to such adverse party; fourth, upon judgment to the extent of the costs included therein, or, if there be a special agreement, to the extent of the compensation specially agreed upon, from the giving of notice thereof to the party against whom the

judgment is given and filing the original with the clerk wherein the judgment is entered or docketed.

The first two of the subdivisions of section 1574 above cited are in the nature of retaining liens, and depend upon possession. The third and fourth subdivisions provide for the particular or charging liens. It is to be seen that, in each of the particular or charging liens provided for in the last two subdivisions, there must be notice given to the adverse party or judgment debtor, and the lien accrues only from the time of notice. The third subdivision is that, if there shall be money in the hands of the adverse party to the action or proceeding, then a lien may be claimed and had on such money, which lien accrues from the time of giving notice to such adverse party; not before. It would not be a valid claim on such money until notice had been given. The object of this provision was to protect the adverse party in whose possession the money might be.

If in this case there was money available for the payment of the claim of Hendrickson, the proper proceeding for the lien claimant would have been to file his claim with the referee, so that notice thereof should be had. If no money was then available, the claim would not lie. The lien claimant here seems to have based his claim of lien on the fourth subdivision, or general claim of a charging lien on the judgment or moneys recovered by the judgment or allowance of the claim. As above stated, there can be no general charging lien under our law, except as provided by the statute. See Stearns v. Wollenberg, 51 Or. 88, 92 Pac. 1079, 14 L. R. A. (N. S.) 1095.

In this case it appears that there was no special agreement for compensation, and therefore the lien can only take effect from the time notice was given and filed with the clerk. Although the claims were allowed in July, 1920, no notice of lien was filed until the January following, nearly a month after the assignment of the claims and the proceeds thereof to Spaeth. It appears from all that is shown in the evidence, that the assignment was made in good faith and for a valuable consideration, and not in fraud of the attorney.

Because there was no special agreement as required by the statute, and because the lien could not attach until after assignment had been made, I am satisfied that the assignee,

Hendrickson, is entitled to the full amount of the preferred claims.

The motion to set aside the order of the referee will therefore be denied, and an order issued, directing the trustee to pay the priority claims of creditor Hendrickson to his assignee Spaeth.

⊙⟹See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes