**Thomas PHILLIPS and Irene D. Phillips, Appellants,**

**v.**

**Ada JONES, Appellee.**

**No. 29.**

Supreme Court of Alaska.

Aug. 26, 1960.

McNealy, Merdes, Camarot & Fitzgerald, Fairbanks, for appellants.

Charles E. Cole, Fairbanks, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Associate Justice.

Appellants, who are husband and wife, appeal from a final order of the District Court[1] denying their motion for an order requiring the Clerk of the Court to pay over to them a check for $2,000 lodged with him by the appellee as the cash settlement portion of a settlement agreement which resulted in the termination of the law suit between the parties. Appellants, through their counsel, claim that the $2,000 was subject to an attorney's lien of their counsel, which was prior and superior to an attachment lien sought to be impressed upon the fund in court by a creditor of the appellant Thomas L. Phillips.

The factual background necessary to an understanding of the case is as follows: On October 25, 1958, the appellee, as plaintiff below, instituted civil action No. 10,228 against the appellants to have the trial court declare a forfeiture of appellants' interest as purchasers under a certain real estate contract of purchase and sale whereunder the appellee was the vendor.

On January 19, 1959, the interest of the appellant, Thomas L. Phillips, hereinafter referred to as Mr. Phillips, in the subject property known as Aurora Lodge was attempted to be attached by Quality Meat Company in a separate action in the same District Court against Mr. Phillips alone, being civil cause No. 10,326. Mr. Charles E. Cole was counsel for appellee in both actions, and the law firm of McNealy, Merdes, Camarot & Fitzgerald represented the appellants.

On April 22, 1959, during a pre-trial conference in civil cause No. 10,228, the parties announced in open court and for the record that they had agreed to settle the case. By the terms of the settlement agreement the appellee was to pay to the appellants $2,000 in cash and assume certain of their financial obligations in exchange for a conveyance by the appellants of their interest in Aurora Lodge. Appellants also agreed to withdraw the answer which they had filed in the action and to permit the appellee to take a default judgment foreclosing all their rights in the property.

On April 27, 1959, attorney Cole, without the knowledge of the appellants, caused a second writ of attachment to be issued in cause No. 10,326. On the following day the United States Marshal served this writ, together with a notice of garnishment on

---

1. The jurisdiction of the District Court for the District (Territory) of Alaska was terminated by Executive Order No. 10,867 on February 20, 1960, 28 U.S.C.A. § 81A note. Jurisdiction over further proceedings in this action will devolve upon the newly created Superior Court of the State of Alaska, by reason of Section 16 of the Alaska Statehood Act, Public Law 85–508, 72 Stat. 350, 28 U.S. C.A. § 81A note, approved July 7, 1958.

the appellee, who acknowledged an indebtedness to Mr. Phillips in the sum of $2,000; and the Marshal then filed his return to that effect.

On April 30, 1959, the appellee and Mr. Phillips, with their respective attorneys Mr. Cole and Mr. Merdes, met in Mr. Cole's office. It appears that Mr. Cole had reduced the settlement agreement to writing and the same was there signed by the appellee and Mr. Phillips. Mr. Phillips then executed and delivered to appellee a quitclaim deed to Aurora Lodge, thus completing performance by the appellants of all obligations required of them under the settlement agreement. The other appellant, Irene D. Phillips, did not appear at the meeting or sign the agreement and quitclaim deed as she had earlier conveyed all of her interest in Aurora Lodge to Mr. Phillips.

Also, at this meeting the appellee executed a draft, in the form of a check for $2,000, dated April 30, 1959, and made payable to the order of Mr. Phillips, in furtherance of the settlement agreement. She delivered the check to Mr. Cole, who announced that he would deposit the same with the Clerk of the Court that afternoon, in order to allow time for the appellee to deposit sufficient funds in the bank to cover the draft. This was agreeable to Mr. Phillips and his attorney. Later on the same day Mr. Merdes, on behalf of his law firm, served upon Mr. Cole and filed with the Clerk of the Court the "Notice of Attorney Lien" set forth in the margin.[2]

It has been determined that the subject check or draft is lodged with the Clerk of Court; that it has never been endorsed by Mr. Phillips and, therefore, has not been converted to cash or deposited to any bank account of the Court or Clerk thereof; and that no record was made of the date on which it was received in the Clerk's office; however, Mr. Merdes sets forth in an unrefuted affidavit contained in the record that the check was not deposited with the Clerk until on or about May 6, 1959. The records and files of the Superior Court (successor to the District Court) also establish that the Notice of Garnishment, served by the Marshal in connection with the second attachment, informed the appellee "that all moneys * * * [and] debts due or owing * * * to the defendant [Mr. Phillips] * * * were being attached by virtue of the writ." In her written return to the Marshal on April 28, 1959, the appellee stated that she then owed and was indebted to Mr. Phillips in the sum of $2,000 and that said sum was being held by her subject to the Marshal's orders.

The record indicates (1) that neither the appellants nor their counsel had any knowledge of the issuance of the second writ of attachment until some time after May 6, 1959; and (2) that there was a special agreement between Mr. Phillips and his attorneys that he was to pay them $30 per hour for professional services, plus $100 per day for court appearances, in connection with this case, and any moneys obtained by appellants in the settlement of the case were to be applied toward payment of such attorneys' fees. The appellee does not concede or deny that there was

2. "In the District Court for the District of Alaska, Fourth Division, Ada Jones, Plaintiff vs. Thomas L. Phillips and Irene D. Phillips, Defendants. No. 10,228, Notice of Attorney Lien. "McNealy, Merdes, Camarot & Fitzgerald, Attorneys for the defendants, Thomas L. Phillips and Irene D. Phillips, herein, claim a lien for attorneys fees in the amount of Three Thousand, Five Hundred, Fifty Dollars ($3,550.00) against the Two Thousand Dollar ($2,000.00) cash settlement made to defendant's [sic] herein by virtue of the Settlement Agreement dated April 20, 1959

and actually executed on April 30, 1959; which money is presently in the hands of the adverse party's attorney, but will this date, pursuant to agreement between counsel, be deposited with the Clerk of the Court, to be disbursed by said Clerk in accordance with law. "Dated this 30th day of April, 1959.
"McNealy, Merdes, Camarot & Fitzgerald
"By /s/ Edward A. Merdes
"Edward A. Merdes"
[Verification by Mr. Merdes and acknowledgment by Mr. Cole follow.]

such a "special agreement." Nor does the record contain any denial by the appellee that the appellants had no knowledge of the second attachment until after May 6; although Mr. Cole in his brief herein for the appellee states that at the time of closing the settlement agreement the appellee announced that the $2,000 owing appellants under the settlement agreement would be used to pay Quality Meat.

A formal judgment conforming to the provisions of the settlement agreement, was entered and filed by the Court on May 6, 1959. Several weeks later, to bring the claim of lien before the trial court, appellants' attorneys filed in the principal case a "Motion to Determine and Pay Over Lien." They claimed a charging lien against the $2,000 check by virtue of paragraphs third and fourth of section 26-8-1, A.C.L.A. 1949.[3] In a memorandum opinion the court held that the attorneys were not entitled to a lien as their claim did not fall within the provisions of the Alaska attorney lien statute, and directed Mr. Cole to prepare an order accordingly. Appellants then moved for reconsideration by the court of its opinion or in the alternative for an order specifically enforcing the settlement agreement. In support of the motion there was filed a seven-page affidavit of Mr. Merdes detailing certain facts and circumstances relating to the settlement agreement, the $2,000 check, and the liens above mentioned, concerning which the court had been theretofore uninformed. Mr. Cole filed a memorandum in opposition to the motion but unsupported by any affidavit, documentary proof or other evidence.

The court recognized that Mr. Merdes' affidavit supplemented and clarified the facts in the record at the time the memorandum opinion was prepared but declared that this did not alter the legal conclusions and consequences set forth in the memorandum opinion. By amended order, entered on the 1st day of February, 1960, the trial court denied the pending motion and reaffirmed its denial of the earlier motion. This appeal resulted.

We shall consider first the question whether the appellee on the 28th day of April, 1959, had in her possession or under her control any money, or debts due or owing, belonging to or owing to the appellants, or either of them, which would have been subject to attachment by Quality Meat Company under the writ of attachment and notice of garnishment served upon her on the date last mentioned. At page 6 of its memorandum opinion the trial court expressed the view that at the time of the garnishment the appellee, as garnishee, was in fact indebted to the appellants in the sum of $2,000 under the settlement agreement. Even on reconsideration and after examination of Mr. Merdes' affidavit and the copy of the settlement agreement attached thereto, the Court held to its original pronouncement. On this point the trial court was mistaken.

Looking to the agreement itself and bearing in mind that it was drafted by appellee's attorney, we read:

"(1) Plaintiff [appellee] will pay to defendants [appellants], through Thomas L. Phillips, the sum of $2,000.-00 in cash *upon the execution of this agreement*.

"(3) Defendants will execute a quit-claim deed to plaintiff for the subject

---

3. This section with respect to attorneys' charging liens provides as follows:

"An attorney has a lien for his compensation, whether specially agreed upon or implied, as provided in this section—

\* \* \*

"Third. Upon money in the hands of the adverse party in an action or proceeding in which the attorney was employed from the time of giving notice of the lien to that party.

"Fourth. Upon a judgment to the extent of the costs included therein, or, if there be a special agreement, to the extent of the compensation specially agreed on, from the giving notice thereof to the party against whom the judgment is given and filing the original with the clerk where such judgment is entered and docketed. This lien is, however, subordinate to the rights existing between the parties to the action or proceeding."

property and deliver it to plaintiff *on the execution of this agreement.* \* \* \*" (Emphasis added.)

Mr. Merdes, in his affidavit in support of the motion for reconsideration,[4] alleged that it was his understanding that the oral settlement was not to be final and binding until it had been reduced to writing, a deed of appellants' interest in the subject property delivered to the appellee, and concurrent delivery made by the appellee to Mr. Phillips of the $2,000 cash settlement. Mr. Merdes' "understanding" of the situation is borne out by the two paragraphs of the written agreement just quoted and by the acts of the parties themselves on April 30, when they met in Mr. Cole's office to finalize the agreement.

■ In the light of what transpired at that meeting it appears to this court that the procurement of the second writ of attachment in civil cause No. 10,326 and the return of the appellee to the notice of garnishment to the effect that she was on the 28th day of April, 1959, indebted to Thomas L. Phillips in the sum of $2,000 were done under a misapprehension of her legal situation. Certainly, if Mr. Phillips had demanded $2,000 of the appellee on that 28th day of April in furtherance of the settlement agreement, she could and, no doubt, would have answered, "I don't owe you anything until you sign the settlement agreement and execute and deliver to me a quitclaim deed to Aurora Lodge."

■ A good case in point is that of Armstrong v. Armstrong, 1923, 196 Iowa 947, 192 N.W. 887, in which the Court laid down the rule that only a debt already due, or for the maturity of which time alone is necessary, is subject to garnishment, and that the liability of a garnishee must be determined as of the date of garnishment. That case held, as we are holding here, that the contract involved contemplated that payment by the one party and de-

livery of a document of conveyance by the other should be concurrent acts.

Having concluded that the attachment writ was without force or effect in this case because there was no attachable property of Mr. Phillips in the possession or control of the appellee on the day when the writ and notice of garnishment were served upon her, we come to the second question which must be decided in this appeal, that is, whether counsel for the appellants have a valid and enforceable charging lien against the $2,000 check which the appellee executed in favor of the appellant, Mr. Phillips, in furtherance of the settlement agreement and delivered to the clerk of the court.

■ The provisions of the Alaska attorney's lien statute, relating to charging liens, are set forth in footnote 3, supra. Paragraph third of that statute gives the attorney a lien for his compensation, whether specifically agreed upon or implied, upon money in the hands of the adverse party in any action or proceeding in which the attorney was employed from the time of giving notice of the lien to the adverse party. The lien is not valid until the required notice has been given. This is to protect the adverse party in whose possession the money might be.[5] It has been held that service of such notice upon the attorney of record of the adverse party is sufficient.[6] In the instant case notice of the attorneys' claim of lien was not only served upon appellee's attorney of record, but it was also filed in the case with the clerk of the court; so the appellee had ample notice of the lien.

■ The trial court pointed out in its memorandum opinion that the Alaska attorney's lien statute comes to us by way of an Act of Congress providing a civil government for Alaska, approved May 17, 1884 (23 Stat. 24). Section 7 of that Act declares that the general laws of the State of Oregon then in force and effect and not in

4. 355 P.2d at page 169, supra.

5. In re Winston's Lien, 1922, 6 Alaska 482.

6. Noftzger v. Moffett, 1901, 63 Kan. 354, 65 P. 670.

conflict with the applicable laws of the United States are to be the laws of Alaska. Our statute was thus taken bodily from Oregon (see Carter Code, Sec. 742) and has remained unaltered by legislation in Alaska ever since. With this we agree. We also agree that it has been the rule in Alaska that when a statute of one jurisdiction is adopted by another jurisdiction, the latter takes the statute with the interpretation placed upon it by the first jurisdiction up to the time of its adoption.[7] But we cannot follow the trial court in its next assertion that the Oregon case of In re Scoggin,[8] decided in 1879, is authority for its holding in this case that the $2,000 check executed by the appellee in favor of Mr. Phillips was not money in the hands of the adverse party upon which the statutory attorney's lien could attach.

The Scoggin case is authority only for the proposition that a mere debt from the adverse party to the client of the attorney who claims the lien is not "money in the hands of the adverse party", and that "money" as contemplated by the statute means some specific funds which have actually come into the adverse party's possession as custodian or trustee and to obtain which the action or suit is brought. The case is clearly distinguishable on the facts. There the attorney obtained for the heirs of the estate, for whom he appeared, a decree disallowing $876 of the credits of the administrator, thus augmenting by that amount the assets of the estate available for distribution to the heirs. The attorney then gave notice to the administrator that he claimed a lien upon the decree for his compensation for his services. The following observation of the Oregon Court is significant and lends some weight to its decision [21 Fed.Cas. 781]:

"Whether this sum ($876.00) was ever in the hands of the administrator as money, or whether his liability there-

for grew out of a negligent failure to collect the same from the debtors of the estate does not appear. * * *"

The circumstances in the case before us are entirely different from those in the Scoggin case. Here the obligation owing from the appellee to the appellants was no longer a "mere debt" but had become money, a specific sum, in the hands of the appellee. Mr. Merdes in his affidavit, earlier mentioned herein,[9] declared on oath that it was the understanding of Mr. Phillips and himself, and not stated otherwise by the appellee or her attorney, that the $2,000 check represented cash which the appellee was required to deliver to Mr. Phillips pursuant to the settlement agreement. Even the notice of attorney's lien, which is verified and was served upon appellee's attorney, speaks of the $2,000 as "money * * * presently in the hands of the adverse party." The appellee did not choose to refute any of this testimony before the trial court. In fact, in his memorandum in opposition to appellants' motion to determine and pay over lien,[10] Mr. Cole refers to the $2,000 both as "money" and as a "sum", and concludes his argument with this assertion:

"* * * at the time notice of the attorney lien was given, the second writ of attachment in the Quality Meat suit had been served and from that time on the $2,000.00 was in the hands of the United States Marshal under the writ of attachment."

Our legislature has not seen fit to define the term money as used in the attorney lien statute or elsewhere. We interpret this to mean that it was not intended to limit the word to any narrow or restricted sense such as coin, currency, or legal tender. Checks have been recognized as being one of the three types of money in use in the United States, the other two being metallic money

7.  Druxman v. Renhard, 1954, 122 F.Supp. 822, 15 Alaska 105.

8.  C.C.D.Or., 21 Fed.Cas. pp. 780, 781, No. 12,511.

9.  See 355 P.2d at page 169, supra.

10.  See 355 P.2d at page 169, supra.

and paper money;[11] and so we find from the unrefuted evidence in the case before us that the $2,000.00 check drawn by the appellee in favor of Mr. Phillips constituted money in the hands of the adverse party. In so holding we not only recognize the apparent intent of the parties as set forth in the record but give expression to the beneficent view that attorney lien statutes are to be regarded as remedial and should be liberally construed in aid of the object sought by the legislature, which is to furnish security to attorneys for their efforts by giving them a lien upon the subject of the action.[12]

We conclude, therefore, that the attorney's lien has been established under paragraph third of our statute; and it will not be necessary to decide whether the lien also comes within the requirements of paragraph fourth of the statute.

The case is reversed and remanded to the Superior Court of Alaska, Fourth District, with directions to foreclose the attorney's liens summarily.

11. See "The Law of Modern Commercial Practices", Section 32 (1958), by Frederick A. Whitney, Vice-Dean and Professor Emeritus St. John's University School of Law. In commenting upon the wide use and ready acceptance of checks as payment, Professor Whitney states:

"Checks are more frequently used in making payments than coins or paper money. It has been estimated that 90 per cent of all commercial debts are paid by check. The Federal Reserve system calls checks 'demand deposit money'".

See also Frauenfelder v. State ex rel. La Prade, 1935, 45 Ariz. 183, 41 P.2d 311, 312, in which the court recognized the fact that the word "money", if so intended, might mean certificates of deposit, checks, credits and mortgages, but as used in the state constitution with reference to the medium for paying taxes could mean only lawful money of the United States. The statute read: "Taxes * * * for State purposes shall be paid * * * in money only." Const. art. 9, § 3. The court attached much significance to the word "only".

12. Berrum v. Georgetta, 1940, 60 Nev. 1, 93 P.2d 525, 98 P.2d 479, and Galbreath v. Armstrong, 1948, 121 Mont. 387, 193 P.2d 630, 634. See also Pearcy v. Columbia Growers & Packing Corp., 1943, 173 Or. 1, 143 P.2d 913, 149 A.L.R. 1378.