*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| LAW OFFICES OF STEVEN D. SMITH, P.C., | ) ) ) | Supreme Court No. S-15615 |
| Appellant, | ) ) | Superior Court No. 3AN-14-05219 CI |
| v. | ) ) | O P I N I O N |
| DANA CECCARELLI, | ) ) | No. 7108 - June 17, 2016 |
| Appellee. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Mark Rindner, Judge.

Appearances: Steven D. Smith, Law Offices of Steven D. Smith, P.C., Anchorage, for Appellant. Carl D. Cook, Law Office of Carl D. Cook, P.C., Anchorage, for Appellee.

Before: Fabe, Winfree, Maassen, and Bolger, Justices. [Stowers, Chief Justice, not participating.]

MAASSEN, Justice.

## I. INTRODUCTION

A superior court order required the Child Support Services Division (CSSD) to audit the child support and spousal support accounts of a divorced couple. The audits revealed that the agency had collected too much child support from the ex-wife and that the ex-husband owed her the overpayment as well as arrearages in spousal support. The ex-wife's attorney filed an attorney's lien on money in the ex-husband's

possession that the attorney claimed was owed to his client, then filed a separate action to enforce the lien. The ex-husband paid the money to CSSD, which turned it over to the ex-wife.

The superior court granted summary judgment to the ex-husband on the attorney's lien claim, concluding that the lien was invalid because the ex-husband was required to pay the money for the overpayment and the spousal support arrearages directly to CSSD. The attorney appeals.

We conclude that the attorney's lien satisfied the requirements of the governing statute, AS 34.35.430(a)(3). We therefore reverse the superior court's summary judgment order and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

Michelle and Dana Ceccarelli are divorced. Michelle initially had custody of their two children, but Dana took full custody while Michelle spent time in prison. Michelle and Dana have had disputes over child and spousal support for over ten years. Michelle moved for back payment of child support but in October 2005 the superior court denied her motion, then in November 2005 denied her motion for reconsideration.

### A. The June 2007 Superior Court Order

In 2007 the superior court decided that it had based its November 2005 order on an incomplete record, omitting an October 2005 Notice of Adjustment from CSSD. The November 2005 order had concluded that Dana was current on his child support obligation, but it relied on a CSSD audit that predated the Notice of Adjustment. The Notice of Adjustment revealed that Dana was in arrears in the amount of $11,244.02 at the time he took custody of the children. The court ordered that CSSD take into account these newly determined arrearages in offsetting the parties' CSSD accounts.

## B. The June 2008 Child Support Order

A June 2008 order required Michelle to pay Dana monthly child support. The order erred in its child support calculation, however, and it failed to expressly state that it did not supersede the superior court's 2007 order taking into account the child support arrearages Dana owed Michelle. Because CSSD failed to credit Michelle with the $11,244.02 in arrearages, her child support payments began to accrue immediately and for the wrong amount. These errors meant that Michelle incorrectly accrued approximately $18,000 in child support arrearages while she was imprisoned.

## C. CSSD's Seizure Of Michelle's Funds

After Michelle was released from prison, CSSD's accounts continued to show that she owed Dana approximately $18,000 in unpaid child support. Dana asked for CSSD's help to recover this money after Michelle received a settlement in a personal injury case following a bike accident. CSSD apparently served an order to withhold and deliver on Michelle's personal injury attorney,[1] and in May 2012 CSSD seized a total of $18,000 from the settlement funds and from Michelle's bank account. CSSD used the seized funds to pay Dana the child support arrearages that Michelle appeared to owe him.[2]

## D. The March 2013 Order Modifying Child Support

In March 2013 the superior court issued an order modifying the June 2008 child support order and requiring CSSD to adjust Michelle's and Dana's accounts for two reasons. First, the court found that the June 2008 order should have stated "that

---

[1]     CSSD is authorized by statute to "issue to any person . . . an order to withhold and deliver property," including "[a]ll real or personal property belonging to the obligor." AS 25.27.250(a), (b).

[2]     CSSD made two payments to Dana from the seized funds: one for $15,389.51 and one for $2,922.28.

previous orders issued by the court were not intended to be superseded," and that because of this omission CSSD erroneously failed to credit Michelle's account with the $11,244.02 in child support arrearages Dana had been ordered to pay her in 2007 — an error that persisted in 2012 when CSSD seized Michelle's funds. The superior court expressly reinstated the June 2007 order and required that CSSD audit the parties' accounts again and adjust them accordingly.

The 2013 order also found that the 2008 order had the wrong amount for Michelle's monthly child support obligation. The court required CSSD to adjust her child support account to correct for the error in the 2008 order; it further found that she was physically incapacitated because of her bike accident, that because of her incapacity she should pay only the minimum child support obligation of $50 per month, and that her account should be adjusted to reflect this amount "as of May 2012 until further order of the court."

This March 2013 order did not expressly require the parties to repay any excess funds to CSSD. It simply instructed CSSD to "notify the parties' attorneys" should the "credit plus the sums seized from [Michelle] in 2012 exceed [Michelle's] current arrearages."

E.     The November 2013 Order

In November 2013 the superior court ordered CSSD to "adjust its account for [Dana] to reflect the correction of the arrears." It further ordered CSSD to "offset the accounts for child support owed by each parent as ordered in the June 18, 2007 order" and gave the agency 30 days to provide the court and the parties with new audits of both parties' child support accounts. When CSSD finished these audits, it concluded that Dana owed spousal support but not child support and that it had taken too much money from Michelle by garnishment, with the result that Dana owed Michelle a refund for overpayment of child support. On February 7, 2014, Michelle moved "for a hearing

regarding the distribution . . . of $10,639.88 presently held by . . . Dana." This amount represented the overpayment to Dana that had been revealed by the CSSD audit.

###### F.     The Attorney's Lien Filed By Michelle's Attorney

Michelle had been represented by attorney Steven D. Smith since CSSD's seizure of her settlement funds. In January 2014 Smith filed a notice of attorney's lien on Dana's counsel, Carl Cook, based on legal fees Michelle owed for the services Smith had provided. On February 24 Smith filed an Action to Foreclose Lien under AS 34.35.430. In his complaint, Smith alleged that the amount of his lien was $7,742.18 and that "as the result of a garnishment upon Michelle . . . performed by [CSSD]" Dana had been given "[m]ore than $10,000 in excess of what [Michelle] owed." Smith alleged that he had served notice of his attorney's lien on Dana's counsel but that Dana had stated his "intent not to honor the lien but instead pay the money to CSSD." Dana's answer to the complaint asserted various affirmative defenses and generally denied "all allegations that he is liable for payment of a debt owed by Michelle . . . to [Smith]."

On February 25, 2014, the day after Smith filed his complaint, Dana sent two payments to CSSD: one for the excess funds CSSD had garnished from Michelle and turned over to him and the other for spousal support arrearages he owed Michelle. CSSD passed the money on to Michelle. Michelle then paid Smith $2,000, leaving a balance of $5,742.18 due for his legal fees.

Smith moved for summary judgment in his action to foreclose the attorney's lien. Dana opposed and filed a cross-motion for summary judgment. In June 2014 the superior court issued an order denying Smith's motion, granting Dana's cross-motion, and dismissing Smith's claim without further elaboration. Smith moved for reconsideration, arguing that the superior court had erred in failing to issue findings of fact and conclusions of law. The superior court denied the motion, stating that there was no issue of material fact and that Dana was entitled to summary judgment as a matter of

law "for the reasons identified" in Dana's opposition and cross-motion. The court added that Smith "was seeking to lien monies . . . which [he] had no right to lien" and that his "complaint is with his client who did not pay him — not with [Dana] who reimbursed the State as he was obligated to do."

Smith appeals, contending that the superior court erred by deciding on summary judgment that his attorney's lien was invalid and by failing to issue findings of fact and conclusions of law in support of its decision.

## III.   STANDARDS OF REVIEW

"We review grants of summary judgment de novo,"[3] determining "whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law."[4] We interpret statutes de novo, "using our independent judgment."[5]

## IV.   DISCUSSION

### A.   Alaska Law Authorizes Smith's Attorney's Lien.

The validity of Smith's attorney's lien depends on whether it meets the requirements of Alaska's attorney's lien statute, AS 34.35.430. As relevant here, the statute provides that "[a]n attorney has a lien for compensation, whether specially agreed upon or implied, . . . upon money in the possession of the adverse party in an action or proceeding in which the attorney is employed, from the giving of notice of the lien to that

---

³       *Alaska Native Tribal Health Consortium v. Settlement Funds Held for or to be Paid on Behalf of E.R. ex rel. Ridley*, 84 P.3d 418, 423 (Alaska 2004).

⁴       *Prentzel v. State, Dep't of Pub. Safety*, 169 P.3d 573, 581 (Alaska 2007) (quoting *In re Estate of Maldonado*, 117 P.3d 720, 722 (Alaska 2005)).

⁵       *Theresa L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 353 P.3d 831, 837 (Alaska 2015).

party."[6] This statutory subsection provides Smith with a charging lien if its elements are met.[7]

"[A] charging lien is based on equitable considerations, and gives an attorney the right to have fees and costs due to the attorney for services in a particular suit secured by the judgment or recovery in such suit."[8] Unlike a retaining (or possessory) lien, "a charging lien can be enforced in a court proceeding to provide the attorney with payment."[9] "In order that a valid charging lien may exist, it is essential that there exist some subject matter to which such lien may attach."[10] To protect the adverse party in possession of the subject matter, "[t]he lien is not valid until the required notice has been given."[11]

Smith served the notice of attorney's lien — both its original and amended versions — on Cook, Dana's counsel, and the parties do not dispute the notice's

---

[6] AS 34.35.430(a)(3).

[7] *See Phillips v. Jones*, 355 P.2d 166, 170 (Alaska 1960) ("Paragraph third of [AS 34.35.430] gives the attorney a lien for his compensation . . . ."); *In re Sea Catch, Inc.*, 36 B.R. 226, 230 (Bankr. D. Alaska 1983) (citing *In re Winston's Lien*, 6 Alaska 482, 485 (1922)) (explaining that subsection (3) "provides for a charging lien upon money in the hands of an adverse party in an action in which the attorney is employed from the giving of notice of the lien to the adverse party").

[8] *Sea Catch*, 36 B.R. at 230 (explaining that in contrast, "a retaining lien only gives the attorney the right to retain possession of the client's documents, money or other property which comes into the attorney's hands during the course of employment until the balance due for the attorney's services is paid").

[9] *Id.*

[10] 7A C.J.S. *Attorney & Client* § 540 (2015).

[11] *Phillips*, 355 P.2d at 170.

sufficiency.[12] The validity of Smith's lien therefore turns on whether the amounts of the child support overpayment and spousal support arrearages that Dana owed Michelle, Smith's client, constituted "money in the possession of the adverse party in an action or proceeding in which the attorney is employed."[13]

### 1. The money at issue was in the possession of the adverse party.

Dana argues he "was not an adverse party" under AS 34.35.430(a)(3) "because he did not possess funds that were payable to Mr. Smith's client." He argues that he was instead required to pay CSSD, citing two authorities: (1) the superior court's orders and (2) the overpayment provision of the income withholding statute.

In support of the first argument — that court orders required him to make payments to CSSD — Dana refers to the 2001 child support order, which stated: "[Y]ou must make all payments through CSED[14] or as directed by CSED. Do not make payments directly to the custodian after receipt of this notice and order." At the time, both parties had requested that the agency manage their child support payments.

But the 2001 order refers only to payments of child support, not spousal support or the potential reimbursement of overpayments. And once the superior court discovered that Dana owed these funds, its November 2013 order did not require that Dana pay the money to CSSD; it simply ordered that CSSD adjust Dana's account to reflect the arrears and that the agency "offset the accounts for child support owed by each

---

[12] *Id.* ("[S]ervice of such notice upon the attorney of record of the adverse party is sufficient.").

[13] AS 34.35.430(a)(3).

[14] The Agency changed its name from the Child Support Enforcement Agency to the Child Support Services Division in 2004. *Overview of Child Support Services*, DEP'T OF REVENUE ALASKA CHILD SUPPORT SERVS. DIV., http://www.csed.state.ak.us/overview.aspx (last visited June 6, 2016).

parent as ordered in the June . . . 2007 order."[15] The record simply does not support Dana's argument that he was required to pay the money to CSSD because of the superior court's orders.

As for whether Dana was required to pay CSSD by statute, we must first identify the statute under which Dana was holding the money. Smith contends that CSSD collected Michelle's funds through an order to withhold and deliver authorized by AS 25.27.250. That statute does not address overpayments. From this omission Smith argues that "[t]here is no overriding state interest to justify [Dana's ignoring of] the lien." On the other hand, Dana argues that CSSD seized the funds under the income withholding statute, AS 25.27.062, which does address one kind of overpayment. The statute provides that "if the agency receives money from an obligor under an income withholding order after the underlying support order has been satisfied and the agency was enforcing the support order at the time it became satisfied, the agency shall immediately return the overpayment to the obligor."[16] The statute further provides that if CSSD has already disbursed the money, "the state is liable to the obligor for the amount of the overpayment" plus interest, and "a person to whom the agency erroneously disbursed the overpayment is liable *to the state* for the amount disbursed" plus interest.[17] Because the person holding the overpayment is liable for it "to the state" rather than to the person who made the overpayment, Dana contends that the funds he

---

[15]  A CSSD representative testified at her deposition that the superior court could have ordered that "the payments . . . go through [the agency] for a correct accounting" and that this "happens often." But the superior court did not make such an order in this case.

[16]  AS 25.27.062(*l*)(1).

[17]  *Id.* (emphasis added).

held were constructively "in the possession of the" state (CSSD) rather than "the adverse party,"[18] consequently falling outside the reach of Smith's attorney's lien.

The orders by which CSSD seized Michelle's funds are not in the record, but a CSSD employee, Delinda Cain, testified about them at a deposition. Cain testified that CSSD issued an income withholding order to a restaurant where Michelle worked and possibly to other employers, and that it also issued an order to withhold and deliver to collect funds from Michelle's personal injury settlement, held by her attorney. But Cain's testimony does not clarify the date or purpose of the income withholding order.

Cain did testify that all of the approximately $18,000 CSSD seized from Michelle in May 2012 came from her personal injury settlement and her bank account. The parties do not appear to dispute that CSSD garnished the settlement proceeds to satisfy Michelle's child support arrearages. Cain also pointed out that an income withholding order, as the name suggests, is issued only to employers; thus one could not have been used to acquire the settlement funds that ended up in Dana's hands as an overpayment of past-due child support. Nothing in the record suggests that CSSD used such an order.[19] We conclude that the statute authorizing income withholding orders — and its provision for the reimbursement of overpayments made in the context of those orders — does not apply to this case.

---

[18]   *See* AS 34.35.430(a)(3).

[19]   In his 2014 affidavit Smith attested that CSSD told him it would not honor his lien because it was not an adverse party and "pursuant to AS 25.27.062(*l*)(1) CSSD must return overpayments directly to the obligor." It is not clear whether CSSD was just relying on its standard response to questions like Smith's or CSSD meant that the statute governing income withholding orders applied. But Cain, the CSSD deponent, clarified that the agency would not in any event consider the excess funds paid to Dana an "overpayment" under that statute because CSSD accurately followed court orders and any mistake originated with the court, not CSSD.

Further, as noted above, AS 25.27.250 — the statute authorizing orders to withhold and deliver — has no language that would oblige Dana to reimburse CSSD for an overpayment.  Dana does not argue otherwise.  The money at issue in this case was physically in Dana's hands.  Because no order or statute required that he pay the money to CSSD directly, the money was not in CSSD's hands, even constructively, and it was subject to Smith's attorney's lien.

### 2. A third party's failure to honor a valid attorney's lien or interplead the claimed funds results in liability.

Dana argues that allowing an attorney's lien under the facts of this case would "wrongfully shift[] the burden of [Smith's] contract with his client upon [Dana]." But the same can be said of any charging lien, since any such lien requires a third party to satisfy the debt of another from funds in the third party's hands.  Because a charging lien exists by statute in Alaska, an attorney has a right to use the device for the recovery of fees if the statutory requirements are met.[20]  And we have concluded that "attorney lien statutes are to be regarded as remedial and should be liberally construed in aid of the object sought by the legislature, which is to furnish security to attorneys for their efforts by giving them a lien upon the subject of the action."[21]  A third party like Dana who questions the validity of a charging lien can avoid the prospect of double liability by interpleading the funds.[22]

---

[20] *Phillips v. Jones*, 355 P.2d 166, 172 (Alaska 1960)*; see also In re Sea Catch, Inc.*, 36 B.R. 226, 230 (Bankr. D. Alaska 1983).

[21] *Phillips*, 355 P.2d at 172; *see* AS 34.35.930 ("The intent of [the lien] chapter is remedial and its provisions shall be liberally construed.").

[22] *See, e.g., Noey v. Bledsoe*, 978 P.2d 1264, 1272 (Alaska 1999) (recognizing interpleader as the appropriate means of resolving a disputed attorney's lien on funds in
(continued...)

- 11 -                                                                          **7108**

**B.    The Amount Dana Owes Smith Must Be Determined On Remand.**

Smith asserts that Dana made two payments to CSSD in February 2014 by two separate checks: one for past due spousal support in the amount of $4,694.04 and one as a refund of Michelle's overpayment of child support in the amount of $6,692.03. Smith seeks only $5,742.18,[23] less than the amount of the refunded overpayment. Dana does not present evidence controverting Smith's numbers, but he does not concede them either, and we do not find them in the record outside of Smith's pleadings.[24]

We remand so that the superior court can make factual findings regarding the amounts of both the spousal support and the refunded overpayment of child support. It may be that these numbers are not disputed. We note, however, that if Smith's attorney's lien exceeds the amount of the refunded overpayment and reaches funds that were due Michelle for spousal support, statutory exemptions may apply to reduce the amount available for attachment.[25]

---

[22](...continued)
co-counsel's possession and stating that in determining the existence of interpleader jurisdiction, "the relevant inquiry was not whether the lien was actually valid, but rather whether the lien was colorably valid so that [the third party] would risk liability by ignoring it").

[23]    Smith originally asserted a lien in the amount of $7,742.18, more than the alleged amount of the refunded overpayment. Michelle paid him $2,000 after she received the funds from CSSD.

[24]    *See Brock v. Rogers & Babler, Inc.*, 536 P.2d 778, 783 (Alaska 1975) ("Assertions of fact in pleadings and memoranda are not admissible evidence and cannot be relied upon for the purposes of summary judgment.").

[25]    *See* AS 09.38.030(a) (granting individual debtors an exemption on earnings subject to execution); AS 09.38.030(e)(2) (providing that "money or property received for alimony or separate maintenance" constitutes "earnings" for purposes of the exemption from execution); *see also Bero-Wachs v. Law Office of Logar & Pulver*, 157

(continued...)

## V.   CONCLUSION

We REVERSE the superior court's grant of summary judgment and REMAND for further proceedings consistent with this opinion.

---

[25](...continued)
P.3d 704, 707-08 (Nev. 2007) (holding "that attorney's liens cannot attach to exempt alimony or exempt retirement accounts awarded in a divorce decree").