## UNDERHILL et al. v. JACOB DOLL & SONS et al.

### No. 289.

Circuit Court of Appeals, Second Circuit.

March 5, 1934.

L. & A. U. Zinke, of New York City (Alexander U. Zinke and Max J. Wolff, both of New York City, of counsel), for appellants.

David W. Kahn, of New York City (Myron K. Wilson, of New York City, of counsel), for respondents.

Before MANTON, L. HAND, and MACK, Circuit Judges.

MANTON, Circuit Judge.

Receivers were appointed for Jacob Doll & Sons and the Premier Grand Piano Corporation in September, 1930. Prior to the appointment of such receivers, the appellants were attorneys for both defendants. In September, 1925, the defendant corporations had claims against the Bartlett Music Company of Los Angeles, Cal. The Bartlett Music Company caused an assignment to be made early in 1926 to trustees for the benefit of its creditors. The trustees were granted power to wind up the business and distribute the assets pro rata after paying preferred claims. Suits were instituted on the claims of the defendants herein and resulted in recoveries.

The defendants assigned their claims, for the purpose of such suits, to one Blanche Brown, and were represented by an attorney in Los Angeles, Cal., who agreed to prosecute the claims on a contingent basis of 50 per cent. of any recovery to himself. In the California suits the appellants arranged to take depositions in New York to establish the claims. The receivers were not advised of the litigation in California until March, 1933, when they were notified by appellants that

appellants were holding two checks for $519.-01 and $1,183.67, drawn by the attorneys for Blanche Brown, the assignee of the claims, to the order, respectively, of Jacob Doll & Sons and the Premier Grand Piano Corporation. The appellants could not use the checks, but were claiming a retaining lien, as distinguished from a charging lien, in holding the checks.

By the law of the state of New York, there are two types of attorneys' liens. Judiciary Law (Consol. Laws, c. 30) § 475, provides: "From the commencement of an action or special proceeding, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, decision, judgment or final order in his client's favor, and the proceeds thereof in whosoever hands they may come; and the lien can not be affected by any settlement between the parties before or after judgment or final order. The court upon the petition of the client or attorney may determine and enforce the lien." Kedrovsky v. Archbishop of R. O. G. C. Church, 218 App. Div. 121, 217 N. Y. S. 873; Matter of Albrecht, 225 App. Div. 423, 233 N. Y. S. 383. But to enforce such lien he must appear as attorney of record. Goodwin Film & Camera Co. v. Eastman Kodak Co. (D. C.) 216 F. 831. There is a second kind of lien, a retaining or possessory lien which permits the retention by the attorney of such papers, securities, or moneys, belonging to his clients, which come into his possession in the course of professional employment. Matter of Heinsheimer, 214 N. Y. 361, 108 N. E. 636, Ann. Cas. 1916E, 384. This is the retaining lien that the appellants contend they have.

Did the two checks come into the possession of the appellants in the course of their professional employment? Coming, as they did, after the receivership of the appellants' clients, the corporations, it may be admitted that they rightfully acquired possession; still it is plain that it was not such a possession as authorized the right to liens on the checks.

The checks should have gone at once into the possession of the receivers. Appellants had no right of possession in them. The appellants knew that receivers had been appointed for both corporations, and therefore of assets which would include the checks which should have been transmitted to the receivers. They were the proceeds of the chose in action in existence at the time of the appointment of the receivers. A possession, such as the appellants obtained, was one through mistake on the part of the transmitter of the checks in California. Appellants had no legal right to retain the checks. If the checks were sent after the receivership, at the request of the appellants, rights of possession would not be created in their favor. The appellants' services, transmitting the claims to California for prosecution and aiding in the prosecution of the claims in so far as they could in New York, would justify their receipt of the checks only to the extent of acting as the transmitter thereof to the receivers. No claim is made that the receivers authorized or directed the checks be sent to the appellants. The record is not clear, but, assuming that they were received because of lack of knowledge on the part of the attorney of record in the California proceedings, that would not be a receipt by the appellants in the course of their professional employment.

The California attorney of record had a charging lien and apparently satisfied it. He had prosecuted the claim on a contingent basis and deducted the amount of his fee before sending the remittance in each case.

The retaining lien on papers belonging to a client which come into the possession of an attorney in the course of his professional employment necessarily refers to possession acquired lawfully and in the usual course of such employment, and not to a possession brought about by accident, mistake, or unauthorized act of a correspondent in a foreign jurisdiction. It is not suggested that the appellants improperly or unlawfully obtained the checks. We hold merely that under the circumstances existing at the time the checks were received, the appellants could not impress a retaining lien upon them. The right of the receiver to the checks was paramount to the appellants', and, while services may have been rendered by the appellants prior to the receivership, there was no professional possession supporting a lien after receivership.

We are referred to Bowling Green Savings Bank v. Todd, 52 N. Y. 489, where a receiver was appointed for a client and, after such receivership, moneys were collected by the attorneys who claimed a lien. The court held that the subsequent receipt of the money by the attorneys was for the receiver and not for the bank and that the debts due

from the bank could not be interposed against the receiver's title. It was held that the attorneys acquired a lien on the bond and mortgage when placed in their hands for collection for moneys due to them for services rendered by them to the bank, which lien was not defeated by the subsequent appointment of a receiver. The principle of the case is that, where possession of the res through consent of the client is obtained, the attorney may hold it to satisfy his lien. Possession thus lawfully given will support a lien. It is the right to withhold and nothing more. In Ward v. Craig, 87 N. Y. 550, where a general assignment was made, the attorneys rendered services for the assignor. The plaintiff retained the attorneys to collect a claim the assignor had. The attorneys recovered and kept the proceeds, claiming a lien for past services. The court there held that the lien was not modified or lost by reason of a subsequent assignment. In re Wilson & Greig, 12 F. 235 (D. C. S. D. N. Y.), Judge Brown, reviewing the cases, considered the general lien for the balance of an entire amount extending to papers and documents of a client, and held that it depended wholly upon possession and gave the right to retain such papers until the bill was paid, where attorneys came into possession of the proceeds of the judgment lawfully in the course of professional employment and distinguished between a retaining and discharging lien.

In the case of In re Stronge & Warner Millinery Co., 33 F.(2d) 1001, 1002 (D. C. D. Minn.), the issue was whether under the Minnesota statute (Gen. St. Minn. 1923, § 5695) a lien for a general balance could be enforced by attorneys who had commenced a suit against a debtor of their client. The statute granted an attorney's lien for compensation "Upon the papers of his client coming into his possession in the course of his employment" and "Upon money in his hands belonging to his client." After suit was instituted, the client became a bankrupt. It was through the attorney's efforts that a settlement of the suit was procured. The original attorneys, however, were authorized to consummate the settlement after the receivership, and collected the amount thereof. Under these circumstances, a retaining lien upon the proceeds of the settlement was enforced.

But the possession of the checks, acquired here, did not justify impressing a retaining lien upon them.

Order affirmed.