## NIC PROJECTOR CORPORATION v. MOVIE–JECKTOR CO., Inc. (SCHNEIDER et al., Interveners).

### Application of LINDER.

District Court, S. D. New York.
Aug. 29, 1935.

Leo J. Linder, of New York City (Leo Magill Goodman, of New York City, of counsel), for petitioner.

Harry Ernest Rubens and Samuel Ostrolenk, both of New York City, for intervening petitioners.

I. Maurice Wormser and John E. Leddy, both of New York City, for respondent.

PATTERSON, District Judge.

The proceeding is brought by an attorney, Leo J. Linder, to have an attorney's lien declared and enforced.

The plaintiff brought suit in this court against the Movie-Jecktor Company, charging infringement of patent and seeking the usual injunction against further infringement and accounting of profits on past infringement. Linder was the plaintiff's attorney. It was agreed in writing that for his services in the case Linder was to be paid "25% of whatsoever moneys are received by you (the plaintiff) from Movie-Jecktor Co. * * * by settlement or otherwise." The contract of retainer also dealt with Linder's compensation for services in a suit commenced in Connecticut against another supposed infringer and for services in suits to be brought later, but these matters are of no present importance.

The suit was settled before trial, while the case in Connecticut was in course of being tried. The settlement was evidenced by two papers, a stipulation entitled in the suit and a license agreement, signed simultaneously and referring each to the other. By the stipulation, dated May 15, 1935, and signed by the attorneys only, the defendant withdrew its answer and consented to a decree to the effect that the patent was valid, that it had been infringed, and that the plaintiff should have an injunction, the injunction, however, to be stayed during the life of the license agreement. The defendant also agreed in the stipulation to pay $25,000 as the profits derived from infringement to date and as liquidated damages—$7,500 down, $10,000 by January 31, 1936, and $7,500 by January 31, 1937. The plaintiff agreed to accept such sum as full payment of past profits of the defendant and also to credit the two later payments, $10,000 and $7,500, against the two minimum royalties of the same amounts agreed to be paid by the defendant under the license agreement. It was finally stipulated that on default in making the agreed payments the plaintiff might have judgment entered for any unpaid balance of the $25,000. A consent decree along the same lines was later entered.

By the contemporaneous license agreement, the plaintiff granted to the defendant a license to make and sell products under the patent for the life of the patent, the defendant to pay a specified royalty per article. The defendant agreed also to pay as minimum royalties $10,000 for 1935 and $7,500 for 1936, and the agreement ties up these two payments to the two payments of the same amounts as damages under the stipulation and provides that the payment of the minimum royalties by the licensee shall constitute the two later payments under the stipulation. There are the other provisions usually found in license agreements.

The plaintiff received from the defendant the first payment of $7,500 and paid to Linder $1,875 as his 25 per cent. of that amount. It later received $555 as current royalties under the license agreement, but rejected Linder's demand for 25 per cent. of this payment. It denied liability for any further amount. Linder takes the position that he is entitled to 25 per cent. of all payments to be made to the plaintiff under the stipulation and the license agreement.

An intervening petition was filed by Rubens and Ostrolenk. These attorneys were engaged by the plaintiff under written contract of retainer. They were to assist Linder in the preliminary work in the case brought in this court and also in all phases of the Connecticut case, and for such services they were to have a fixed fee (which has been paid) and 7½ per cent. of the amount received from Siemon, the defendant in the Connecticut case. If services in connection with the trial of this case should be required, compensation for such work was to be agreed on later. No such trial services here were ever performed, but for the preliminary work in this case and for their work in the Connecticut case these attorneys assert that they are entitled to 7½ per cent. of all payments to be made by the defendant in this case.

First, the rights of Linder. He was the plaintiff's attorney of record in the suit under which the present petition was brought. By the New York Judiciary Law, § 475, he has a lien on his client's cause of action and on the proceeds of it, to secure payment of his compensation, and the lien may be determined and enforced summarily in a proceeding ancillary to the main suit. The state statute creates an equitable right and remedy which may be enforced on the chancery side of the fed-

eral courts sitting in New York. In re Baxter & Co., 154 F. 22 (C.C.A.2); Machcinski v. Lehigh Valley R. Co., 272 F. 920 (C.C.A.2); Brooks v. Mandel-Witte Co., 54 F.(2d) 992 (C.C.A.2); Woodbury v. Andrew Jergens Co., 69 F.(2d) 49 (C.C. A.2). The plaintiff says that there is no jurisdiction to entertain the proceeding. This argument is based on the assertion that the only recovery was in the Connecticut suit. But the facts make it plain that the settlement was in the suit brought in this court. The stipulation of settlement is entitled in this suit, and a decree was entered here on the stipulation. That the settlement was arranged while the Connecticut case was on trial, and that the defendant in this suit intervened in that case as a party defendant, are matters without legal significance. Jurisdiction to entertain the proceeding cannot be deemed doubtful. The only question is as to the amount to which Linder is entitled.

■ Literally, the agreement brings to the attorney 25 per cent. of every payment made by the defendant to the plaintiff, no matter what the consideration for the payment. But the agreement, taken as a whole, indicates that the clause will not carry so broad a construction. The parties had before them the matter of agreeing on compensation for the attorney for services in pressing a cause of action in behalf of the client, and what was unquestionably intended was that the attorney should be entitled to 25 per cent. of everything realized by the client from the cause of action against the defendant. The true effect of the contract of retainer was that for his services in pressing the plaintiff's claim or cause of action against the defendant he was to have one-fourth of whatever the plaintiff might exact from the defendant out of such claim or cause of action.

The settlement embraced not only the cause of action for infringement, but also a license agreement. In order to get the benefits of the compromise that was made, the plaintiff did more than surrender his cause of action for past infringement; he granted a license agreement to the defendant to manufacture and sell for the future. Part of the moneys to be paid to the plaintiff, viz., the regular royalty payments per article sold, are indubitably in consideration of the license and are outside the scope of the contract of retainer with the attorney.

The figure of $25,000 was agreed on in the stipulation as liquidated damages for past infringement, and at first sight would appear to be realization out of the cause of action prosecuted. But by the license agreement the greater part of this sum, $17,500, is earmarked also as minimum royalty for 1935 and 1936. The two papers, the stipulation and the license agreement, are to be read together. It is evident then that only $7,500 was agreed on as profits or damages by past infringement; the remaining $17,500 was both for damages on the past and for minimum royalties for the right to use the patent in the future. The attorney has received his agreed share of the $7,500 portion.

■ The result is that the consideration received and to be received by the plaintiff for its cause of action has been scrambled with the consideration to be received by it for the grant of a license. It is impossible to say how much the plaintiff gained from the cause of action alone, and it is only in this feature of the recovery that the attorney has an interest by specified percentage. The agreed measure of compensation being impossible of application, the attorney is entitled to payment on the basis of what his services to the plaintiff were fairly and reasonably worth. See Williston on Contracts, § 1972. See, also, Sargent v. McLeod, 209 N.Y. 360, 103 N.E. 164, 52 L.R. A.(N.S.) 380; Martin v. Camp, 219 N.Y. 170, 114 N.E. 46, L.R.A.1917F, 402; Woodbury v. Andrew Jergens Co., supra.

■ Second, the rights of Rubens and Ostrolenk. These lawyers were never attorneys of record in this suit. The charging lien exists in favor of no one but the attorney of record. Matter of Sebring, 238 App.Div. 281, 264 N.Y.S. 379; Underhill v. Jacob Doll & Sons, 69 F.(2d) 519 (C.C.A.2). Rubens and Ostrolenk have therefore no lien on the cause of action or its proceeds. Moreover, it is plain from the contract of retainer held by them that the compensation for any services shown to have been rendered to the plaintiff was to have come from the Connecticut suit. They have not shown that they have any financial interest in the suit before this court. Their intervening petition will be dismissed.

The matters arising on Linder's petition will be referred to a special master to hear and report on the fair and reasonable value of his services in this suit. The intervening petition of Rubens and Ostrolenk will be dismissed.