**In re E. C. ERNST, INC., E. C. Ernst Midwest, Inc., E. C. Ernst International Co., Debtors.**

Nos. 78 B 2139 to 78 B 2141.

United States Bankruptcy Court, S. D. New York.

May 21, 1980.

See also D.C., 2 B.R. 757.

Friedman & Gass, P.C., pro se, Shea & Gould, New York City, for debtors.

Stroock & Stroock & Lavan (Krause, Hirsch & Gross), New York City, for Creditors' Committee.

## DECISION ON APPLICATION TO ENFORCE ATTORNEYS RETAINING AND CHARGING LIENS

EDWARD J. RYAN, Bankruptcy Judge.

On December 1, 1978, E. C. Ernst, Inc., E. C. Ernst Midwest, Inc., and E. C. Ernst International Corp. (collectively the "debtors"), filed petitions in proceedings for an arrangement pursuant to Chapter XI of the Bankruptcy Act. By an order of this court dated December 1, 1978, the debtors were authorized to continue in possession of their property, to operate their respective businesses, and to manage their properties until further order of the court. Bankruptcy Act §§ 342, 343; Bankruptcy Rules 11–18(b), 11–23. On December 1, 1978, an order was entered authorizing the debtors in possession to employ and retain the law firms of Shea, Gould, Climenko & Casey and Friedman & Gass, P.C. ("F & G") as attorneys to represent them under general retainers. At the time of the petition, F & G had served as the debtors' special counsel and had represented the debtors in various matters. As co-counsel to the debtors in possession, F & G received a $50,000 retainer for services to be rendered in connection with the bankruptcy proceedings; included in F & G's retention was the continued prosecution of a lawsuit entitled *E. C. Ernst, Inc. v. City of Philadelphia*, Civil Action No. 72–539, in the United States District Court for the Eastern District of Pennsylvania ("City of Philadelphia litigation").

In settlement of the City of Philadelphia litigation, the City of Philadelphia has paid the principal amount of a judgment in favor of E. C. Ernst, Inc., in the amount of $618,161.37. Payment was delivered to F & G, as counsel of record, pursuant to instructions of counsel, by means of a check dated March 24, 1980, payable to "E. C. Ernst and A. Friedman". The check was deposited in a special 30-day interest bearing account at the Manufacturers Hanover Trust Company in the name of "Arthur Friedman, special account for E. C. Ernst, Inc."

By application brought on by order to show cause, F & G allege the existence,

in favor of F & G, of attorneys' liens, both retaining[1] and charging, against the proceeds of the City of Philadelphia litigation, with respect to certain matters F & G handled on behalf of the debtors and debtors in possession. Specifically, F & G seek to apply the proceeds of the City of Philadelphia check (the "fund(s)" or "check") in reduction of approximately $127,811 in unpaid pre-petition fees and disbursements due and owing F & G unconnected to the City of Philadelphia litigation and, to apply approximately $4,210 for post-petition services and disbursements rendered in connection with the City of Philadelphia litigation.

Stroock & Stroock & Lavan, counsel for the creditors committee, oppose the application and their opposition is sustained. For the reasons stated below, the application of F & G for the enforcement of attorneys' liens is denied.

The fundamental vice of F & G's application is the failure to note the disparate identity of its clients, viz., the debtors as distinguished from the debtors in possession.

■ The debtor in possession in Chapter XI is not the same entity as the pre-bankruptcy company. *Shopmen's Local U. No. 455, et al. v. Kevin Steel Prod., Inc.* (hereinafter "Kevin Steel"), 519 F.2d 698 (2d Cir. 1975); *Brotherhood of Railway, et al. v. REA Express, Inc.* (hereinafter "REA"), 523 F.2d 164 (2d Cir. 1975), *cert. denied* 423 U.S. 1017, 96 S.Ct. 451, 46 L.Ed.2d 389 (1975) and *cert. denied International Assoc. of Machinists & Aerospace Workers v. REA Express, Inc.*, 423 U.S. 1073, 96 S.Ct. 855, 47 L.Ed.2d 82 (1976).

Upon the filing of an arrangement petition, *"[a] new entity is created* with its own rights and duties, subject to the supervision of the bankruptcy court." *Kevin Steel, supra,* at 704 (emphasis added).

The court in *REA*, upholding the rejection of executory collective bargaining agreements by the debtor in possession, stated, "The debtor-in-possession . . . being a different entity from the pre-bankruptcy company, is not a 'party' to the agreement and hence not subject to § 8(d)'s termination restrictions with respect to it." *REA, supra,* at 167.

■ There are two types of attorneys' liens recognized in New York: one is the statutory charging lien and the other is the common law retaining lien.

### The Charging Lien

Judiciary Law § 475, provides, in pertinent part:

"From the commencement of an action or special proceeding . . ., or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien can not be affected by any settlement between the parties before or after judgment or final order. The court upon petition of the client or attorney must determine and enforce the lien." 29 McKinney's Consolidated Laws of New York Annotated, *Judiciary* § 475 (1968).

The plain words of the statute and general caselaw analysis of the attorney's charging lien demonstrate that:

1) The attorney must appear as attorney of record;[2]

2) The fund out of which the attorney seeks to be paid must have been secured substantially by the attorney's services rendered in creating such fund;[3]

---

1. The retaining lien may not be enforced by order of court. It is possessory only. *Schwartz v. Schwartz*, 25 Misc.2d 225, 205 N.Y.S.2d 34 (1960). This is of no moment here in light of this decision.

2. *Underhill et al. v. Jacob Doll & Sons et al.*, 69 F.2d 519, 520 (2d Cir. 1934) citing *Goodwin*

*Film & Camera Co. v. Eastman Kodak Co.*, 216 F. 831 (W.D.N.Y.1914), *affd.* 222 F. 249 (2d Cir. 1915).

3. *Hanna Paint Mfg. Co. v. Rodey et al.*, 298 F.2d 371, 373 (10th Cir. 1962); *In re Miller*, 17 CBC 28 (E.D.Penn.1978); 4B Collier on Bankruptcy (14th ed.) § 70.87[2].

3) The lien relates back and takes effect from the time the attorney's services were commenced;[4]

4) The lien attached at the time a verdict, report, decision, judgment or final order is rendered,[5] in the hands of whomsoever the proceeds may come;

5) The attorney must not have evidenced any intent to waive the lien;[6]

6) Application must be made to the court to determine (according to the reasonable value of the services performed)[7] and enforce said lien.

■ In the present case, the funds generated, out of which F & G seek payment, are the proceeds of the City of Philadelphia litigation. Since F & G appeared as the attorneys of record for E. C. Ernst, Inc., rendering professional services toward the creation of said fund and, since the alleged lien asserted in the application to this court relates back to the commencement of F & G's services in the City of Philadelphia litigation (i. e., effective pre-petition), F & G, absent waiver or express contrary intent, have a valid attorneys' charging lien on the City of Philadelphia funds to the extent of the reasonable value of their pre-petition services rendered in connection with the creation of said funds. Since the lien relates back to the commencement of F & G's services (i. e., pre-petition), the fact that the debtors each filed a Chapter XI petition does not affect the lien as to those relevant pre-petition activities. It is well settled that, to the aforementioned extent, the charging lien survives bankruptcy.[8] However, F & G's application does not seek payment from the City of Philadelphia litigation fund for those pre-petition services rendered in generating the fund; rather, F & G seek general payment from the fund for work rendered in connection with unrelated pre-petition matters as well as post-petition services rendered to the debtors in possession.

■ Clearly, on a charging lien application, F & G are not entitled to payment out of the fund in connection with any unrelated matters. Equally clear is the fact that F & G's post-petition services rendered in connection with securing the fund were services rendered by an attorney for the debtor in possession and are compensable only according to Rule 219 of the Bankruptcy Act.[9]

F & G were retained as co-counsel for the debtors in possession under a general retention order, and post-petition services rendered by F & G are compensable upon application to the court, according to the reasonable value of the services rendered.

### The Retaining Lien

■ The common law retaining lien, which is also being asserted by F & G, is a "possessory lien which permits the retention by the attorney of such papers, securities, or moneys, belonging to his clients, which come into his possession in the course of professional employment."[10] There are two distinct reasons for invalidating the retaining lien asserted by F & G. The very cases cited by F & G in their Letter Memorandum dated May 7, 1980, require a finding against any valid possessory lien. The court in *Underhill* found that the possession of certain checks by the attorneys for two corporations, where receivers had earlier been appointed, did not justify impressing a retaining lien upon said funds. *Underhill,*

4.  *Hanna Paint Mfg. Co. v. Rodey et al., supra,* at 373; *In re Miller, supra,* at 31.

5.  *Underhill v. Jacob Doll & Sons, supra,* at 520 citing Judiciary Law § 475.

6.  *In re Graziane,* 166 F.Supp. 516, 517 (N.D.N.Y.1958), *affd. McChesney v. Sims,* 267 F.2d 215 (2d Cir. 1959).

7.  *In re Miller, supra,* at 32.

8.  4B Collier on Bankruptcy (14th ed.), *supra,* at 1003. For purposes of enforcing valid attorneys' liens, the rule is the same for reorganization proceedings and straight bankruptcy cases. *See, Browy v. Brannon, infra,* at 801.

9.  *In re Miller, supra,* at 30.

10. *Underhill v. Jacob Doll & Sons* (hereinafter "Underhill"), *supra,* at 520 citing *Matter of Heinsheimer,* 214 N.Y. 361, 108 N.E. 636 (1915).

and the cases cited therein, turned not upon the receipt of funds post-petition, as contended by F & G, but rather upon the question of the "lawful possession" of such funds.

Clearly, documents or funds in the lawful possession of an attorney prior to the client-owner's bankruptcy are subject, as a general security interest, to all of the attorney's claims against the client-owner.[11] To this extent, the pre-petition lawful retention by the attorney survives bankruptcy.[12] Thus, if an attorney lawfully has in his possession any funds belonging to his client prior to said client's bankruptcy, the then existing retaining lien for all pre-petition services survives bankruptcy and can be asserted by the attorney post-petition. The cases cited by F & G in support of their application, bar one entitled *In re Stronge & Warner Millinery Co., supra,* coupled with the cases analyzed independently by this court, all follow the pattern outlined above. The instant case, however, is distinguishable in that the funds did not come into F & G's possession until well after the petition was filed. The May 10th Letter Memorandum submitted by F & G quotes certain language from *Underhill* in connection with the *Stronge* case. The language in *Underhill* indicates that *Stronge* was a case where an attorney's retaining lien was valid as to general obligations due the attorney, even though the funds came into the attorney's possession after the client's bankruptcy.

*Underhill's* reference to *Stronge* was entirely different than that suggested by F & G. The issue that was critical in *Underhill,* and to which all of the cases therein cited are relevant, concerns the nature of "lawful possession". In *Underhill,* the court held that since the receivers therein neither authorized nor directed the proceeds of a certain litigation to go to the pre-receivership attorneys, the latter's possession of the funds, however acquired, could not justify impressing a retaining lien upon them. In answering the question:

"Did the two checks come into the possession of the appellant '(attorneys)' in the course of their employment?",

the *Underhill* court responded:

" . . . [I]t is plain that it was not such a possession as authorized the right to liens on the checks.

"The checks should have gone at once into the possession of the receivers. Appellants had no right to possession in them. The appellants knew that receivers had been appointed for both corporations, and therefore of assets which would include the checks which should have been transmitted to the receivers. They were the proceeds of the chose in action in existence at the time of the appointment of the receivers. A possession such as the appellants obtained, was one through mistake on the part of the transmitter of the checks in California. Appellants had no legal right to retain the checks. If the checks were sent after the receivership, at the request of the appellants '(attorneys)', rights of possession would not be created in their favor. . . . No claim is made that the receivers authorized or directed the checks be sent to the appellants . . . .

"The retaining lien on papers belonging to a client which come into the possession of an attorney in the course of his professional employment necessarily refers to possession acquired lawfully and in the usual course of such employment, and not to a possession brought about by accident, mistake, or unauthorized act of a correspondent in a foreign jurisdiction. . . " *Supra,* at 520.

Similarly, referring to the case of *Bowling Green Savings Bank v. Todd,* 52 N.Y. 489, the *Underhill* court stated:

" . . . [T]he subsequent receipt of the money by the attorneys was for the receiver and not for the bank and . .

---

**11.** *In re Stronge & Warner Millinery Co.,* 33 F.2d 1001, 1002 (D.Minn.1929).

**12.** *Browy v. Brannon,* 527 F.2d 799, 801 (7th Cir. 1976), citing *In re San Juan Gold, Inc.,* 96 F.2d 60 (2d Cir. 1938); 4A Collier on Bankruptcy (14th ed.) ¶ 70.87[2]; *In re Luber,* 261 F. 221, 222 (E.D.Penn.1919).

the debts due from the from the bank could not be interposed against the receiver's title. . . . The principle of the case is that, where 'the pre-bankruptcy' possession of the res through consent of the client is obtained, the attorney may hold it to satisfy his lien. . . . " *Supra*, at 520–521.

Finally, referring to *Stronge*, the *Underhill* court stated:

" . . . The original attorneys, however, were authorized to consummate the settlement after the receivership, and collected the amount thereof. Under these circumstances, a retaining lien upon the proceeds of settlement was enforced." *Supra*, at 521.

■ Lawful or professional possession refers to the situation where an attorney possesses documents, moneys, etc., belonging to his clients, either upon the client's express consent or upon appropriate authorization (i. e., court order); however, possession is not acquired lawfully or in the usual course of professional employment and therefore cannot justify the impression of a retaining lien, if brought about by the attorney's unauthorized request, another person's unauthorized act, an accident, a mistake, or, in the case of a receivership, the absence of a direction from the receiver and, impliedly, in a bankruptcy/reorganization case, the absence of a direction from the trustee or court.

■ F & G's unauthorized possession of the proceeds of the City of Philadelphia litigation cannot justify the impression of a retaining lien. The possession was not such as authorized the right to a lien on the fund since the checks were sent to F & G without court authorization, solely at the request of F & G, which request was complied with by the unauthorized act of a correspondent in a foreign jurisdiction.

■ The debtor E. C. Ernst, Inc., is a different entity from the debtor in possession. The services performed for the debtor by F & G are distinguishable from the services performed by F & G for the debtor in possession.[13] Since F & G was newly retained under a general retention order as co-counsel for the debtor in possession, F & G are entitled to receive compensation according to Bankruptcy Rule 219, upon application for services rendered to it.

F & G may not validly assert either a charging lien for services arising post-petition, or a post-petition retaining lien (i. e., lien on funds coming into hands of attorneys post-petition, regardless of when services rendered). F & G remain a general creditor for all pre-petition services rendered and are entitled, upon application, to the reasonable value of their post-petition services. Consistent with this analysis, although specific funds were generated from specific pre-petition efforts of F & G, and an attorneys' charging lien would exist against said funds absent waiver, F & G do not seek such a charging lien and have waived it. The pre-petition services rendered by F & G remain a general unsecured claim even with respect to the proceeds of the City of Philadelphia litigation.

The funds currently held by F & G are not "rightfully possessed" by said law firm and the moneys must be turned over to their lawful owner, the debtor in possession.

It is so ordered.

---

**13.** *Underhill, supra*, at 520, referring to *Bowling Green Savings Bank v. Todd*, 52 N.Y. 489 (1873).