**In re SEA CATCH, INC., fka R-Lee Seafoods, Inc., Debtor.**

**Bankruptcy No. 3–80–00067.**

United States Bankruptcy Court,
D. Alaska.

Dec. 31, 1983.

Robert J. Buckalew of Christianson & Buckalew, Anchorage, Alaska, for trustee.

Brian R. Shute and Francis J. Nosek, Jr. of Shute & Nosek, P.C., Anchorage, Alaska, for Shute & Nosek, P.C.

## OPINION

J. DOUGLAS WILLIAMS, II, Bankruptcy Judge.

■ Debtor's counsel, Brian R. Shute and Frances J. Nosek, ("claimants") successfully defended an Alaska Superior Court action brought against the debtor, obtaining a judgment awarding attorney's fees. The judgment was entered on August 18, 1979, and was appealed to the Alaska Supreme Court which dismissed the appeal on the motion of the appellant on June 2, 1982. The debtor filed a Chapter 11 petition under the Code on February 20, 1980, which was converted to a Chapter 7 proceeding on October 1, 1931.[1] Subsequent to the conversion to Chapter 7, claimants recovered $11,147.77 in an execution on the judgment and have filed a Motion for Disposition of Proceeds Recovered on Execution for authorization to disburse the funds to themselves from a trust account of one of the claimants, asserting an attorney's lien. The execution was made without the approval of the trustee or this Court.[2] The trustee argues that the claimants have neither a retaining nor a charging lien on the fund

and that the money must be turned over to the trustee.[3]

Claimants contend they have an attorney's lien on the proceeds under AS 34.35.-430 for Mr. Shute's pre- and post-petition work in the Alaska Superior Court case, Mr. Nosek's representation of the debtor-in-possession, and other legal work unrelated to the Alaska Superior Court case. The issue is whether claimants have a valid attorney's lien under Alaska law which was perfected at the time the bankruptcy petition was filed, or was subsequently perfected and which relates back to a pre-petition date, so that the lien can withstand the filing of the petition and the trustee's invalidating power.

For the reasons set forth below this Court holds that the claimants have a valid non-voidable charging lien as to the pre-petition services related to the Superior Court action, but that any post-petition services can only be dealt with in an appropriate application for payment of administrative expenses.

## DISCUSSION

■ Subject to the trustee's avoiding powers, the law of the state where the debtor's property is situated generally governs the validity, nature and effect of a lien on the property. *See Meyer v. United States,* 375 U.S. 233, 238, 84 S.Ct. 318, 321, 11 L.Ed.2d 293 (1963); *In re The Computer Room, Inc.,* 24 B.R. 732, 736 (Bkrtcy.N.D. Ala.1982). The law of the place in which the contract between the attorney and

1. All references to the Code are to the Bankruptcy Reform Act of 1978, 11 U.S.C. § 101 *et seq.*

2. For a discussion of Code section 549 *see* p. 231 and n. 5, *infra.*

3. Claimants assert in their final brief that the trustee's objection can only be considered if the trustee initiates an adversary proceeding. The facts are not in dispute and the parties have fully plead to the issues as a contested matter. Given the similarity of proceedings under Bankruptcy Rule 9014 and Part VII of the Bankruptcy Rules, the failure of claimants to file an adversary proceeding to establish the validity of the claimed lien, and the absence of

any apparent prejudice to claimants, this Court finds that under the facts of the instant case no useful purpose would be served by requiring the trustee to file a complaint. Except for the form of the initial pleadings, the matter is essentially before the Court in the same manner as it would be in a hearing on a motion for summary judgment in an adversary proceeding. Additionally, if this matter were pending before a state court, that court could "summarily inquire into the facts on which the claim of a lien is founded, and determine it. . . ." AS 22.20.090(2) (in a show cause proceeding against an attorney who asserts a retaining lien).

client is to be performed or the site of the fund has been said to govern the existence and effect of an attorney's lien. 2 S. Speiser, Attorney's Fees § 16:4 (1973) (Supp. 1983). Accordingly, Alaska law will govern as to whether claimants have a valid attorney's lien on the proceeds from the debtor's judgment since Alaska is both the site of the fund and the place where the services were performed.

■ There is no common law attorney's lien in Alaska. In order to have a valid attorney's lien, the requirements of AS 34.-35.430 must be met. *Pitcher Construction Co. v. United States ex rel. Wright Brothers Construction Co.*, 322 F.2d 843, 845 (9th Cir.1963). In pertinent part, AS 34.35.430 provides:

(a) An attorney has a lien for his compensation, whether specially agreed upon or implied, as provided in this section

(1) first, upon the papers of his client which have come into his possession in the course of his professional employment;

(2) second, upon money in his hands belonging to his client;

(3) third, upon money in the hands of the adverse party in an action or proceeding in which the attorney is employed from the giving of notice of the lien to that party. . . .

Claimants contend they have a lien under subsections (1), (2), and (3).

■ In order to analyze Alaska's lien statute, a distinction must first be made between a retaining or possessory lien, and a charging lien. Generally, a retaining lien only gives the attorney the right to retain possession of the client's documents, money or other property which comes into the attorney's hands during the course of employment until the balance due for the attorney's services is paid. It is similar to a mechanic's or artisan's lien in that it runs against the property, not the client, and allows the attorney to retain things upon which he has worked until he is paid for his work. A retaining lien is possessory in nature. In order for the lien to exist the attorney must have possession of something

to which the lien can attach. 7A C.J.S. *Attorney and Client* § 358 (1980); 2 S. Speiser, *supra* § 16:5.

■ In contrast, a charging lien is based on equitable considerations, and gives an attorney the right to have fees and costs due to the attorney for services in a particular suit secured by the judgment or recovery in such suit. When a charging lien is created by statute, as in Alaska, the right to the lien exists only in those cases provided for by the statute. 7A C.J.S. *Attorney and Client* § 359 (1980).

■ An important distinction between a retaining lien and a charging lien is that a retaining lien cannot be enforced as a lien against the proceeds of an action, but a charging lien can be enforced in a court proceeding to provide the attorney with payment. An attorney's charging lien will be valid against the client and the client's attaching creditors at least from the time it attaches. 7A C.J.S. *Attorney and Client* § 384 (1980).

■ The Alaska attorney's lien statute provides for both retaining and charging liens. Subsections (a)(1) and (a)(2) give an attorney a retaining lien as to papers of the client which have come into the attorney's hands during the course of employment, and upon money in the attorney's hands belonging to the client. Subsection (a)(3) provides for a charging lien upon money in the hands of an adverse party in an action in which the attorney is employed from the giving of notice of the lien to the adverse party. *In re Winston's Lien*, 6 Alaska Reports 482, 485 (1922).

## I. Retaining Liens

### A. Lien on Client's Money in Attorney's Hands Under AS 34.35.430(a)(2).

Claimants' initial contention is that subsection (a)(2) gives an attorney a lien upon money of the client in the attorney's hands, and that the lien in this case related back to the commencement of the suit in the Alaska Superior Court in 1978. Claimants rely on *In re E.C. Ernst, Inc.*, 4 B.R. 317 (Bkrtcy.S.

D.N.Y.1980), and *Matter of TLC of Lake Wales, Inc.,* 13 B.R. 593 (Bkrtcy.M.D.Fla. 1981). Neither case supports claimants' contention. The court in *Matter of TLC of Lake Wales, Inc., supra,* did not reach the issue of the retaining lien asserted by the attorney, but decided the case based on Florida's common law charging lien. As noted above, there are some important distinctions between retaining and charging liens, and the cases dealing with charging liens are not fungible with those decisions based on retaining liens.

In *In re E.C. Ernst, Inc., supra,* co-counsel for the debtors in a federal district court case asserted a retaining lien in the bankruptcy proceeding as to two checks delivered to the attorneys as the result of obtaining a judgment for the debtors in the federal suit. The attorneys obtained the checks after the filing of the Chapter XI petition. The bankruptcy court invalidated the claimed retaining lien, noting that if the funds had come into the attorney's lawful possession prior to the filing of the bankruptcy petition, the then existing retaining lien would survive bankruptcy and could be asserted post-petition in order to recover for pre-petition services. *Id.* at 321. The court further stated that a post-petition retaining lien could not be asserted because the attorneys had not been authorized to receive the checks by the bankruptcy receivers, and lawful acquisition is an underlying requirement of a retaining lien. *Id.* at 321, 322. Although the court stated that a charging lien would relate back to the commencement of an attorney's services, there was no suggestion that a retaining lien would also relate back.[4]

■■■ As in *Ernst,* claimants' acquisition of the funds was not authorized. Claimants did not obtain an order of the Court authorizing receipt of the funds. The trustee has contended that he did not direct claimants to receive the proceeds from execution on

the judgment, which contention claimants have not refuted. Section 549 of the Code, in pertinent part, provides that "... the trustee may avoid a transfer of property of the estate—(1) that occurs after the commencement of the case; and ... (2)(B) that is not authorized under this title or by the court." Thus, any retention of the funds under the claim of a retaining lien would be voidable by the trustee under § 549.[5]

■■■ Moreover, it is questionable if a post-petition retaining lien for pre-petition services can be asserted against the trustee under § 544(a) of the Bankruptcy Code, which provides that the trustee has the same rights as a hypothetical lien creditor as of the date the petition is filed to avoid liens of creditors. The trustee's status as such a lien creditor is not dependent on the existence of an actual creditor. Thus, if an attorney's lien is not perfected as of the date of the filing of the petition, and post-petition perfection does not relate back to a pre-petition date, as discussed below, the attorney's lien cannot withstand the trustee's avoiding power under § 544(a). Alaska law is clear that a retaining lien depends on possession for its existence. *In re Winston's Lien, supra,* at 485. Without possession on the date of the filing of the petition, a lien under subsection (a)(2) does not exist and, therefore, is not perfected against the trustee with regard to pre-petition services.

B. Lien on Client's Papers in Attorney's Possession Under AS 34.35.430(a)(1).

Claimants' second contention is that they have a lien under subsection (a)(1) which extends to the proceeds. Although claimants' reasoning is not fully articulated, it appears to be that since claimants were the original attorneys of record in the Alaska Superior Court case, and as such maintained the debtor's files, the proceeds in question become money received pursuant to execution from papers in the possession of the

---

4. In Ernst, the court noted that the attorneys would have been entitled to a charging lien against the funds generated by the litigation, but they had waived their right to such a lien by failing to assert it.

5. In contrast, the execution by the claimants based upon a charging lien need not be treated as a transfer subject to § 549. *See* discussion *infra,* p. 234.

attorneys and are thus within subsection (a)(1) which gives an attorney's lien on the client's papers which come into the attorney's hands during the course of employment.

■ The reasoning of claimants fails for two reasons. First, claimants wrongly assert that subsection (a)(1) gives claimants a charging lien. As discussed above, subsection (a)(1) only gives the attorney a retaining lien; the attorney may hold the papers as security, but, unless the client initiates a contempt proceeding, may not act to enforce the lien in a judicial proceeding. *See In re Winston's Lien, supra;* 7A C.J.S. *Attorney and Client* § 376 (1980). Claimants may hold the papers they obtained pre-petition, but under the Alaska statute have no ability on their own motion to enforce the lien and obtain payment.

■ Claimants' second incorrect assumption is that the judgment upon which execution was obtained is subject to a retaining lien which is valid against the trustee. As discussed above, a possessory lien requires possession to exist and to be perfected against the trustee. Also, retention of the judgment cannot in and of itself be the basis of a retaining lien since the claimants only retain a copy of the judgment, with the original remaining on file with the Superior Court.[6]

**C. Turnover of Books and Records Under § 542(e) of the Bankruptcy Code.**

■ The issue of the effect of § 542(e) of the Bankruptcy Code on claimants' alleged attorney's lien has also been raised. Section 542(e) provides:

Subject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or

financial affairs to disclose such recorded information to the trustee.

The legislative history of § 542(e) indicates that the provision was intended to deprive attorneys of the leverage available under state lien law provisions to receive payment in full ahead of other creditors when the documents the attorney held pursuant to a retaining lien were necessary for the administration of the bankruptcy estate. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 369–70 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 84 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. Several courts have held that § 542(e) does not invalidate the attorney's retaining lien, but allows the court to order a turnover of the requisite information to the trustee provided adequate protection is given the attorney, and that the adequate protection need not be full payment as under the old Bankruptcy Act. *In re Life Imaging Corp.,* 31 B.R. 101 (Bkrtcy.D.Colo.1983); *In re Beef N'Burgundy, Inc.,* 21 B.R. 69, 9 B.C.D. 324 (Bkrtcy.N.D.Ga.1982).

Section 542(e) is inapplicable to the instant case, as the trustee is not seeking to obtain information being held by claimants pursuant to a retaining lien. Accordingly, the issues of the effect of § 542(e) on a retaining lien and whether adequate protection is required prior to a turnover order need not be reached.

**II. Charging Lien Under AS 34.35.430(a)(3)**

The final argument claimants raise to support their attorney's lien claim is that subsection (a)(3) of the Alaska attorney's lien statute gives claimants a lien on the proceeds of the execution as money in the hands of the adverse party in an action or proceeding in which claimants were employed.[7] Claimants assume that the lien relates back to the commencement of the attorney's services.

---

**6.** A charging lien on the judgment under AS 34.35.430(a)(4) has not been asserted by claimants.

**7.** Although there is some indication that the funds in question were recovered from an exe-

cution on a third party other than the adverse party, the issue has not been raised by the trustee and for the purposes of this opinion the funds will be treated as having been in the hands of the adverse party.

█ In pertinent part, § 546(b) of the Bankruptcy Code provides that the powers of the trustee under § 544 are subject to any generally applicable law that permits perfection of an interest in property to relate back and be effective against an entity that acquires rights in the property before the date of such perfection. In those states which provide that an attorney's charging lien attaches to a judgment, verdict or order and that the effective date of the lien relates back to the commencement of the attorney's services, § 546(b) will protect the attorney's lien from being invalidated by the trustee's status as a hypothetical lien creditor as of the date of the filing of the petition. *See, In re PDQ Copy Center, Inc.,* 27 B.R. 123 (Bkrtcy.S.D.N.Y.1983) (applying New York's attorney's lien statute); *In the Matter of TLC of Lake Wales, Inc., supra,* (applying Florida common law). As noted previously, although the judgment was obtained prior to the filing of the bankruptcy petition, the lien did not attach to the fund until after the conversion of the case to a Chapter 7.

█ The general rule is that an attorney's charging lien relates back to and is effective from the time the attorney commences his services. 7 Am.Jur.2d *Attorneys at Law* § 332 (1980); 2 S. Speiser, *supra,* § 16:21. The principle of relation back was applied in *Hanna Paint Manufacturing Co. v. Rodey, Dickason, Sloan, Akin & Robb,* 298 F.2d 371 (10th Cir.1962) to allow an attorney's lien to defeat a creditor to whom a partial assignment of the judgment was made during the appeal of the judgment. The court first looked to New Mexico law to determine if an attorney's charging lien was valid, but relied on general legal principles in stating that:

> The lien of an attorney for services rendered in an action relates back to, and *takes effect from, the time of the commencement of the services,* when it attaches to a judgment, it is superior to the claim of a creditor in whose favor execution has been levied, or to a subsequent attachment, garnishment, or trustee process, or other liens on the money or property involved, subsequent in point of time.
>
> ... The lien attached at the commencement of appellees [sic] legal services in the case and is prior and superior to the lien of appellant, which arose by virtue of an assignment made during the course of the litigation.

*Id.* at 373 (emphasis added, footnotes omitted).

As in *Winston, supra,* the *Hanna* court is drawing a distinction between the date an attorney's lien attaches and the date it becomes effective against a creditor assignee of the attorney's client. The lien cannot attach earlier than the entry of judgment, as there is nothing for the lien to attach to before that date, and under subsection (a)(3) cannot attach until there are funds in the hands of the adverse party. Generally, however, once the lien attaches it relates back and is effective from the time the attorney begins his efforts on behalf of his client. The issue left to be examined in this case is whether the relation back doctrine applies to Alaska's attorney's charging lien.

Alaska's attorney's lien statute does not specifically provide for a charging lien to relate back. Indeed, subsection (a)(3) of AS 34.35.430 provides that "An attorney has a lien ... upon money in the hands of an adverse party ... *from the giving of notice of the lien to that party....* (Emphasis added). In *In re Winston's Lien, supra,* at 485, the court stated that under subsection (a)(3), the lien "accrues from the time of giving notice to such adverse party; not before. It would not be a valid claim on such money until notice had been given." But such a statement only tells us that as to the adverse party the lien does not become effective until notice is given since it would be inequitable to bind the adverse party without notice. The *effective* date of the lien as to the adverse party, however, does not establish the *extent* of the lien.

█ Once a lien based upon an agreement for compensation takes effect, it relates back to charges incurred from the commencement of the services rendered. *Winston, supra,* involved a dispute between

an attorney who claimed a charging lien under what is now AS 34.35.430(a)(4) for services he rendered in obtaining the allowance of certain bankruptcy claims and a party to whom the claims had been assigned. Subsection (a)(4) provides for an attorney's lien:

... upon a judgment to the extent of the costs included in the judgment or, if there is a special agreement, to the extent of the compensation specially agreed on, from the giving of notice of the lien to the party against whom the judgment is given and filing the original with the clerk where the judgment is entered and docketed.

In construing what is now AS 34.35.-430(a)(4), *Winston* at p. 485 states:

In this case it appears that there was no special agreement for compensation, and therefore the lien can only take effect from the time the notice was filed with the Clerk.

The court held in favor of the assignee of the claims since there was no special agreement for compensation and notice was not given until after the assignment. *Id.* at 485. The clear inference to be drawn from the court's decision, however, is that the effective date of the attorney's lien as to an assignee would have related back to the commencement of services if there had been a special agreement for compensation. Presumably such an agreement would have related back to be effective against not only an assignee (who takes subject to the contractual obligations of his assignor), but also against any third party who claims a right to the fund in question.[8] The notice provision is for the purpose of protecting a judgment or potential judgment debtor, not a third party creditor. It would be inequitable to give a third party creditor (or a trustee representing such creditors) a prior right over the value of the pre-petition services which contributed to the creation of the fund, especially in a case such as the instant one where the fund in question was awarded as compensation for the attorney's services.

The later case of *Phillips v. Jones,* 355 P.2d 166 (Alaska 1960) is consistent with the relation back doctrine implied in *Winston.* In *Phillips,* an attorney's lien was given priority over a writ of garnishment pursuant to subsection (a)(3) of Alaska's attorney's lien statute, which is the charging lien section on which the claimants in the instant case are relying. The writ in *Phillips* was served on an adverse party prior to the notice of attorney's lien being given; however, the court found the writ was ineffective under Alaska law as the debt in question was not yet due since the conditions precedent had not been performed. The court noted that subsection (a)(3) gives the attorney a lien from the time of giving notice regardless of whether his compensation was specifically agreed upon or implied. In *Phillips* there was a special agreement of thirty dollars ($30.00) per hour plus one hundred dollars ($100.00) per day for court appearances, and the extent of the lien related back to cover such services.[9] Citing *Winston,* the *Phillips* court, *supra* at 170, observed that the notice requirement was for the protection of the adverse party who has possession of the money. Moreover, the court noted:

[A]ttorney lien statutes are to be regarded as remedial and should be liberally construed in aid of the object sought by the legislature, which is to furnish security to attorneys for their efforts by giving them a lien upon the subject of the action.

*Id.* at 172 (footnote omitted).

Claimants hold the subject funds in a trust account as the result of a writ of execution having been served on an adverse party subsequent to the appointment of the Chapter 7 trustee and without the trustee's

---

**8.** The issue of priority between an attorney and a third party who receives payment from the judgment debtor before the judgment debtor is given notice of the attorney's lien need not be reached under the facts of the instant case.

**9.** The attorneys in *Phillips* also claimed a lien under subsection (a)(4), but having disposed of the issue under (a)(3), the court found it unnecessary to determine whether the lien also came within subsection (a)(4).

authorization. The situation is basically the same as if the funds were still being held by the adverse party with the writ of execution being deemed to be notice of claimants' attorney's lien.[10] The trustee has failed to show any reason why the general rule of relation back should not be deemed to be the rule of law in Alaska.[11]

Claimants are thus entitled to a charging lien in regard to the subject funds since the extent of their lien relates back to the commencement of the attorneys' services in 1978 and is not voidable by the trustee under section 544 of the Code.

III. Post-Petition Fees and Fees Unrelated to the Alaska Superior Court Suit

The remaining question is the extent of the charging lien. The claimant's charging lien which is effective against the trustee as of the date of the filing of the petition can only secure claimant's pre-petition fees for the Alaska Superior Court suit in which judgment was rendered. Generally, a charging lien does not extend to work which did not generate the fund from which payment is being sought. *In re E.C. Ernst, Inc., supra;* Annot., 23 A.L.R. 4th 336, 338 (1983). Claimants' accounting of services rendered, however, includes post-petition fees, fees for unrelated cases and for representation of the debtor-in-possession in the initial Chapter 11 proceeding, none of which would be covered under AS 34.35.430 by claimants' charging lien. *See* 2 S. Speiser, *supra,* § 16:14.

In regard to post-petition fees, including those for services rendered by claimants in the Alaska Superior Court case which generated the fund (to the extent the fees are not covered in prior applications) the claimants may file an application for administrative expenses pursuant to § 503 of the Bankruptcy Code [12] and according to the applicable Bankruptcy Rules, with notice being given to the appropriate parties. The post-petition services consist of two time periods: (1) fees incurred while acting as counsel for the debtor-in-possession and (2) fees incurred without the express approval of the trustee after the conversion of the Chapter 11 case to Chapter 7. A determination in regard to those fees will necessarily have to await an appropriate application and opportunity for the parties to be heard. Pursuant to the Supremacy Clause of the Constitution, specific Bankruptcy Code and corresponding rule provisions regarding the award of attorney's fees [13] cannot be superseded by an attempt to give a post-petition effect to a state created lien as far as post-petition services are concerned. It is also important to note that prior to the conversion of the case from Chapter 11 to Chapter 7, the post-petition services were being rendered for the debtor-in-possession which is a different entity than the debtor. *See In re .E.C. Ernst, supra.*

## CONCLUSION

Claimants have a valid attorney's lien under AS 34.35.430 as of the date of the filing of the debtor's bankruptcy petition for pre-petition services that directly relate to the action in question. Compensation for post-petition services is governed by the applicable Bankruptcy Code and rule provisions. Therefore, claimants' Motion for

---

10. Claimants, as noted previously, have not made a claim under AS 34.35.430(a)(4) which would appear to be more applicable to their situation (if the statutory filing requirements were met) than to the attorneys in *Phillips,* where the judgment was not obtained until after the assertion of the lien.

11. Although the claimants would have been better advised not to proceed post-conversion without the approval of the bankruptcy court, the matter can be dealt with in regard to any application by claimants for attorney's fees for post-petition services. *See* Part III, *infra.*

12. Although under certain circumstances *pre-petition* fees can be allowed as administrative expenses, if not the subject of a charging lien, compensation for miscellaneous pre-petition services which are unrelated to the Chapter 11 filing and the Superior Court case can only be allowed in regard to the general unsecured claim which one of the claimants has on file in the instant case.

13. Code Sections 327, 328, 330, 1107; Bankruptcy Rules 2002(a)(7), 2014, 2016, 2017; and Local Bankruptcy Rule 23.

Disposition of Proceeds Recovered on Execution is granted only to the extent of compensation for pre-petition services relating to the action in which the execution was issued and for which they have not previously been compensated. Claimants shall surrender the balance of the subject funds to the trustee. An order will be entered accordingly.